IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION

NO. 2:11-CR-00027-D
NO. 2:13-CV-00006-D

| | |
|---|---|
| ELWOOD JOSEPH CEPHUS, ) | |
| ) | |
| Petitioner, ) | |
| ) | MEMORANDUM AND |
| v. ) | RECOMMENDATION |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

This matter was referred to the undersigned on September 17, 2013 [DE-59], for an evidentiary hearing and memorandum and recommendation regarding Petitioner's claim of ineffective assistance of counsel asserted in his motion to vacate sentence pursuant to 28 U.S.C. § 2255. A hearing on the matter was held on October 8, 2013 [DE-66, -68], and the matter is now ripe for decision.

## I. BACKGROUND

On July 14, 2011, Elwood Joseph Cephus ("Cephus" or "Petitioner") was indicted by the grand jury in the Eastern District of North Carolina and charged with conspiracy to possess with the intent to distribute and to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 846 (Count One), and distribution of a quantity of cocaine, in violation of 21 U.S.C. § 841(a)(1) (Counts Two and Three). [DE-1]. On October 3, 2011, pursuant to a plea agreement [DE-24], Petitioner pleaded guilty to Count One. [DE-23]. On February 7, 2012, the court held a sentencing hearing and determined Petitioner's advisory guideline range to be 130 to 162 months' imprisonment. Sentencing Tr. [DE-41] 6:2. The court granted the government's motion under

U.S.S.G. § 5K1.1 and sentenced Petitioner to 144 months' imprisonment. *Id.* at 17:18, 19:2-5; [DE-32]. On November 6, 2012, Petitioner filed a notice of appeal [DE-35], which was dismissed on March 5, 2013, as untimely by the Fourth Circuit Court of Appeals. [DE-46, -47].

On February 4, 2013, Petitioner filed a motion to vacate his sentence under 28 U.S.C. § 2255 [DE-43], and on February 19, 2013, Petitioner filed an amended motion to vacate [DE-45]. On July 30, 2013, the government moved to dismiss or, alternatively, for summary judgment on Petitioner's § 2255 motion. [DE-55]. On September 17, 2013, the court granted in part the government's motion for summary judgment and denied in part Petitioner's motion to vacate his sentence, disposing of all claims except Petitioner's claim that his counsel provided ineffective assistance in failing to file an appeal at the request of Petitioner, which the court determined required an evidentiary hearing as to disputed issues of fact. [DE-59].

## II. STATEMENT OF THE FACTS

On October 8, 2013, an evidentiary hearing was held to determine whether Petitioner's counsel provided ineffective assistance in failing to file an appeal at the request of Petitioner. At the hearing, testimony was received from Petitioner and James Perry ("Perry"), who represented Petitioner at sentencing.

### A. Cephus's Testimony

Petitioner Elwood Cephus testified as follows at the October 8, 2013 evidentiary hearing. Cephus was a criminal defendant in case number 2:11-CR-27-D in this district and reached a plea agreement with the government, which included a recommended 72 month sentence. Hr'g Tr. [DE-68] 5:15-18, 6:8-16. Based on the sentencing recommendation in the plea agreement, Cephus withdrew his objections to the Presentence Investigation Report ("PSR") at his February 7, 2012

2

sentencing. *Id.* 6:8-25, 7:1-2. The court sentenced Cephus to 144 months' imprisonment. *Id.* 6:15-16. Cephus acknowledged that the court informed him at the conclusion of his sentencing that he could file an appeal within fourteen days of judgment being entered. *Id.* 11:20-24.

Cephus was distraught by his sentence. *Id.* 7:3-5. After the sentencing concluded, Cephus met with his counsel, Perry, in a cell with a mesh gate separating the two and both expressed their surprise at the sentence. *Id.* 7:5-8, 8:6-10. Cephus testified that Perry asked him what he wanted Perry to do and that Cephus told Perry to "file the appeal," "proceed with the objections," and "find out the information I was telling you about my man's–my friend's employment." *Id.* 7:8-13. Perry asked if there was anything else he could do and suggested he might contact Cephus's grandmother to advise her as to the proceedings, to which Cephus agreed and also asked Perry to inform "Cindy." *Id.* 7:13-17. The United States Marshal then informed Cephus and Perry that they only had a couple of minutes and Perry prayed with Cephus. *Id.* 7:18-22. After Cephus was removed from the cell, Perry came into the hallway where Cephus was standing, shook his hand, and informed him to call Perry's office if there was anything Cephus needed. *Id.* 7:23-8:1. Cephus told Perry that he would call him when he got "situated," but did not speak with or see Perry again until the October 8, 2013 evidentiary hearing. *Id.* 8:1-5. The entire exchange between Cephus and Perry lasted approximately two to five minutes. *Id.* 8:21-25.

Cephus reached "the compound," presumably a Bureau of Prisons ("BOP") facility, on February 27, 2012. *Id.* 9:5-6. Cephus spoke with the prison law clerk, who informed him it sometimes took up to two or three years for an appeal, so Cephus "wasn't really worried about it." *Id.* 9:8-10. Cephus "periodically" asked his counselor for a "request to call" Perry, but Cephus did not have funds and it appears he did not, in fact, contact Perry at that time. *Id.* 9:11-15.

3

In June 2012, Cephus saw his "co-defendant," Pernell Martinez, a defendant in a related case, who had recently arrived at the BOP facility where Cephus was housed. *Id.* 9:16-20, 10:25-11:2. Martinez informed Cephus that the statement of Donald Charity (another defendant in a related case) attributing drug weight to Cephus and Martinez was excluded in Martinez's case. *See* Hr'g Tr. 9:16-20, 10:8; Gov't's Hr'g Ex. C; PSR [DE-26] 4-6. Cephus had previously asserted that Charity's statement was false and sought to have the statement excluded from the PSR in his own case. *See* Sentencing Mem. [DE-28] 3-4. After learning this information from Martinez, Cephus became "adamant" about contacting Perry and made "a couple of attempts" to contact Perry by phone. Hr'g Tr. 10:8-11. Cephus then consulted with the prison law clerk who advised Cephus to write Perry two letters, which Cephus did on September 1, 2012 and October 8, 2012. *Id.* 10:11-15, 12:21-23; Gov't's Hr'g Exs. C & D.

Cephus acknowledged that his letters to Perry related to challenging the drug weight attributed to Cephus and did not expressly indicate that Cephus had instructed Perry to file a notice of appeal. Hr'g Tr. 14:11-15:10. Cephus testified that he did not discuss the appeal in his letters because he had only been incarcerated for five or six months and had no indication that the appeal had not been filed. *Id.* 15:3-10, 16:2-5. However, Cephus also testified that he wrote the letters to inform Perry that Cephus had information that could be used on appeal. *Id.* 16:8-15. While awaiting a response after writing Perry the second time, Cephus began to get nervous about the status of his appeal and wrote the clerk's office to inquire as to whether Perry filed an appeal, indicating that if no appeal had been filed, Cephus wanted to file an appeal on his own. *Id.* 10:14-20. Cephus was then advised by the "appeal lawyer" to file a § 2255, because his *pro se* appeal would likely be time-barred. *Id.* 10:21-24.

4

## B.  Perry's Testimony

Petitioner's counsel at sentencing, James Perry, testified as follows at the October 8, 2013 evidentiary hearing. Perry has been a licensed attorney in North Carolina for 33 years, regularly appearing in federal court, representing well more than 100 criminal defendants over the last ten years. *Id.* 19:4-12, 34:11-16. Perry represented Cephus in his criminal case and at his February 7, 2012 sentencing. *Id.* 19:13-24. Perry testified that the strategy from the beginning had been to enter a plea and work toward getting a "5K or substantial assistance" reduction and that the government did, in fact, make a substantial assistance motion and recommended at 72 month sentence. *Id.* 19:25-20:8. In reviewing the plea agreement, Perry discussed with Cephus the possibility that the court could sentence Cephus to anything up to the statutory maximum of 20 years, but that the hope was the court would follow the government's recommendation. *Id.* 19:9-13.

Perry did not remember "a lot of details" about his post-sentencing interactions with Cephus based on his "independent recollection." *Id.* 21:4-6. Perry did specifically remember that both he and Cephus were disappointed by the court's 144-month sentence. *Id.* 20:19-25, 25:11-21. Perry further recalled that his post-sentencing meeting with Cephus was "fairly short" and was interrupted, in contrast to approximately twelve personal meetings the two had prior to sentencing, which typically lasted "well over an hour or so." Hr'g Tr. 26:4-11.

Perry did not have an independent recollection of discussing Cephus's appeal rights with him post-sentencing, but believed that he did so based on documentation in his file and his standard practice, which Perry had followed for 30 plus years. *Id.* 25:22-26:3. Perry explained his typical practice with respect to advising his client of appeal rights as follows: first, when discussing whether to enter a plea, Perry reviews the defendant's appeal rights pursuant to the plea agreement; and

second, post-sentencing, Perry has his client sign an appeal waiver, or if that is not possible due to the circumstances (e.g., Perry and the defendant are separated by a physical barrier), Perry makes a note to his file as to the fact that he discussed appeal rights with the defendant and whether the defendant wished to pursue an appeal. *Id.* 21:16-22:1. Perry testified that Cephus's file contained a note made after court, in accordance with his standard practice, which stated as follows: "After court went in back & advised Cephus of appeal rights. He said he did not want to appeal." *Id.* 21:11-15; Gov't's Hr'g Ex. A. The note was signed by Perry and dated February 7, 2012. *See* Gov't's Hr'g Ex. A.

Perry also explained that the fact that a defendant receives a significantly higher sentence than expected does not necessarily mean that the defendant will be more likely to file an appeal, where there is a possibility of a later Rule 35 reduction, which may be negatively impacted by the filing of an appeal. Hr'g Tr. 27:4-19. Perry did not specifically recall discussing with Cephus the potential for § 5K1.1 and Rule 35 reductions, but was sure that he had discussed those issues with Cephus in preparation for entering into a plea agreement and recalled from his notes that Cephus had given information to the government on seventeen people. *Id.* 27:21-28:18. Perry acknowledged that, due to time constraints, he would not have extensively discussed § 5K1.1 and Rule 35 with Cephus in the post-sentencing meeting, but that the expectations going forward were already in place based on past discussions of these issues. *Id.* 28:19-29:3. Perry also acknowledged that he did not discuss with Cephus at the post-sentencing meeting the advantages and disadvantages of taking an appeal because he had discussed the issue before with Cephus: "The groundwork would have already been laid and was already laid in terms of under what circumstances he would take an appeal, the appeal waiver, what were–you know, if appeal would be helpful, would it impact his ability to be

6

able to get a Rule 35." *Id.* 30:15-25. Finally, Perry stated that it was not his normal practice to meet with a defendant a second time post-sentencing, but that he had done so on occasion, specifically when a defendant indicated a desire to appeal, then Perry would meet again with the defendant to ensure that filing an appeal was, in fact, the desired course. *Id.* 32:4-13. Perry did not have such a meeting with Cephus subsequent to their brief post-sentencing encounter. *Id.* 32:14-15.

After receiving Cephus's letters of September 1, 2012 and October 8, 2012, Perry responded by letter of November 1, 2012, informing Cephus (1) that Perry had advised Cephus of his appeal rights after sentencing on February 7, 2012; (2) that Cephus was dissatisfied with the court's finding of fact, conclusions of law or sentence, Cephus had ten days[1] to appeal the sentence from the time the judgment was entered; and (3) that Cephus informed Perry he did not desire to appeal and the time in which to do so had expired. Hr'g Tr. 23:2-23; Gov't's Hr'g Ex. B. Perry testified that had Cephus asked him to file a notice of appeal he would have done so in conformity with his standard practice, notwithstanding the appeal waiver contained in Cephus's plea agreement. Hr'g Tr. 24:7-12.

### III. LEGAL STANDARDS

#### A.     28 U.S.C. § 2255

After conviction and exhaustion, or waiver, of any right to appeal, courts and the public can presume that a defendant stands fairly and finally convicted. *See United States v. Frady*, 456 U.S. 152, 164-65 (1982). However, 28 U.S.C. § 2255 provides a means for a defendant convicted of a federal offense to collaterally attack a conviction or sentence on four grounds: (1) the sentence was imposed in violation of the Constitution or the laws of the United States; (2) the court was without

---

[1] Perry acknowledged at the hearing that this should have been fourteen days, but Cephus has not argued that he was prejudiced as a result of this error.

jurisdiction to impose the sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). "[T]hus § 2255 relief is not limited to constitutional error in a conviction or sentence." *United States v. Mikalajunas*, 186 F.3d 490, 495 (4th Cir. 1999). However, where a petition seeks relief from a nonconstitutional error, "the scope of review . . . is more limited than that of constitutional error; a nonconstitutional error does not provide a basis for collateral attack unless it involves a fundamental defect which inherently results in a complete miscarriage of justice, or is inconsistent with the rudimentary demands of fair procedure." *Id.* "In a § 2255 proceeding, the burden of proof is on petitioner to establish his claim by a preponderance of the evidence." *Toribio-Ascencio v. United States*, Nos. 7:05-CR-00097-FL, 7:08-CV-211-FL, 2010 WL 4484447, at *1 (E.D.N.C. Oct. 25, 2010) (citing *Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958)).

**B.  Ineffective Assistance of Counsel**

The analysis of an ineffective assistance of counsel claim requires application of the two-part test established by *Strickland v. Washington*, 466 U.S. 668, 690-94 (1984). First, the petitioner must show that his counsel's performance was deficient in that it fell below the standard of reasonably effective assistance. *Id.* at 687-691. Second, the petitioner must show that there is a reasonable probability that, but for his counsel's errors, the result of the proceeding would have been different. *Id.* at 694.

With respect to claims that counsel was ineffective in failing to file a notice of appeal, the Supreme Court has held as follows:

> [C]ounsel has a constitutionally-imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that

this particular defendant reasonably demonstrated to counsel that he was interested in appealing.

*Roe v. Flores-Ortega*, 528 U.S. 470, 480 (2000). Counsel's duty to consult with the defendant contemplates "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." *Id.* at 478. "If counsel has consulted with the defendant, the failure to file an appeal is deficient only if it contradicts the defendant's instruction to appeal." *Hudson v. Hunt*, 235 F.3d 892, 896 (4th Cir. 2000). Furthermore, in *United States v. Peak*, the Fourth Circuit held that if a client instructs his attorney to file an appeal, and the attorney fails to do so, the attorney's actions constitute ineffective assistance, notwithstanding the likelihood of success on appeal. 992 F.2d 39, 42 (4th Cir. 1993).

## IV. ANALYSIS

### A. Cephus Did Not Instruct Perry to File an Appeal

Cephus contends that Perry failed to file an appeal at Cephus's request; however, Perry's affidavit [DE-56-1] contradicts Cephus's claim, creating a disputed issue of fact requiring a credibility determination. *See* Sept. 17, 2013 Order [DE-59] at 6. "In assessing the credibility of witnesses, trial courts consider 'variations in demeanor and tone of voice.'" *Rahman v. United States*, No. 7:08-CR-126-D, 2013 WL 5222160, at *5 (E.D.N.C. Aug. 27, 2013) (quoting *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 575 (1985)), *report and recommendation adopted*, 2013 WL 5230610 (E.D.N.C. Sept. 16, 2013). "In addition, '[d]ocuments or objective evidence may contradict the witness' story; or the story itself may be so internally inconsistent or implausible on its face that a reasonable factfinder would not credit it.'" *Id.* (citing *United States v. Marcavage*, 609 F.3d 264, 281 (3d Cir. 2010)). "Additional considerations can include the witness's motive to lie

9

and the level of detail in the witness's statements." *Id.* (citing *United States v. Wilson*, 624 F.3d 640, 665 (4th Cir. 2010)).

Cephus's testimony that he instructed Perry to file an appeal is not credible to the extent it is undermined by both the documentary evidence and Perry's testimony, which is found to be credible and persuasive based on Perry's more than thirty years of experience as a criminal defense attorney with an extensive federal practice, Perry's actions in conformity with his standard practices, and Perry's demeanor as a witness.

Perry's note to Cephus's file, made on the date of sentencing, expressly documented that Perry advised Cephus of his appeal rights and that Cephus did not want to file an appeal. [DE-56-1] at 2. Perry testified that making a note to the client's file is consistent with Perry's standard practice in circumstances where a defendant is unable to sign an appeal waiver due to a physical barrier, such as here where Perry and Cephus were separated by a mesh screen during the post-sentencing meeting. *See* Hr'g Tr. 21:16-22:1. Perry's November 1, 2012 letter in response to Cephus also states that Perry informed Cephus of his right to appeal post-sentencing and that Cephus advised Perry he did not wish to exercise his appeal right. [DE-56-1] at 3. Additionally, other documentary and testimonial evidence belies Cephus's testimony that he asked Perry to file an appeal at their post-sentencing meeting.

Cephus testified that after learning the information from Martinez that Charity's statements had been excluded in Martinez's case, Cephus became "adamant" about contacting Perry and made "a couple of attempts" to contact Perry by phone and then wrote the September 1, 2012 and October 8, 2012 letters. *Id.* 10:8-15, 12:21-23. However, neither of Cephus's letters to Perry, written more than six months after sentencing, make mention of the appeal Cephus claims to have instructed Perry

10

to file. *See* Gov't's Hr'g Exs. C & D. In fact, these letters reference Cephus's desire to utilize information that Cephus only learned from Martinez in June 2012, long after the time to appeal had expired. Hr'g Tr. 9:16-20, 10:25-11:2. Similarly, Cephus's October 26, 2012 letter to the clerk's office also focuses on the new information from Martinez and makes no mention of the appeal Cephus claims to have instructed Perry to file. [DE-58-2] at 11–12.

In a second letter to the clerk's office dated November 3, 2012, Cephus requests information regarding whether or not Perry filed an appeal on his behalf and stated that if no appeal had been filed, he would like to submit one on his own. [DE-58-2] at 13. This letter is ambiguous at best on the question of whether Cephus directed Perry to file an appeal on February 7, 2012, following his sentencing. Moreover, when considered in the context of Cephus's September 1, 2012 and October 8, 2012 letters to Perry, it is reasonable to conclude that Cephus was inquiring as to whether Perry filed an appeal based on his request for help in those letters related to the new information from Martinez.

Finally, the evidence does not support that there was a miscommunication between Perry and Cephus as to whether Cephus wanted to appeal his sentence. The most plausible interpretation of the evidence is that Cephus only sought to challenge his sentence after learning the new information from Martinez in June 2012, four months after his time to appeal had expired. Cephus's testimony that he instructed Perry to file an appeal at their February 7, 2012 post-sentencing meeting is contradicted by credible testimony from Perry and documentary evidence consistent with Perry's testimony. Accordingly, Cephus has failed to carry his burden to show by a preponderance of the evidence that Perry provided ineffective assistance of counsel by failing to file a notice of appeal at Cephus's request.

11

## B. Cephus Has Failed to Demonstrate *Strickland* Prejudice

Having concluded that Cephus did not direct Perry to file a notice of appeal, the ineffective assistance inquiry shifts to "'whether counsel in fact consulted with the defendant about an appeal.'" *United States v. Witherspoon*, 231 F.3d 923, 926 (4th Cir. 2000) (quoting *Roe*, 528 U.S. at 478). In this vein, Cephus argued at the evidentiary hearing that because he received a greater than expected sentence and was distraught during the post-sentencing meeting with Perry, Perry should have discussed his appeal rights more thoroughly post-sentencing or revisited the appeal issue with Cephus at another time prior to the expiration of the appeal period.[2]

Counsel's duty to consult with the defendant contemplates "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." *Roe*, 528 U.S. at 478. The Fourth Circuit's decision in *Witherspoon* has been interpreted by this court to require that such consultation occur after sentencing. *See Mayberry v. United States*, Nos. 5:05-CR-299-FL, 5:07-CV-307-FL, 2008 WL 1902697, at *4 (E.D.N.C. Apr. 29, 2008) (citing *Witherspoon*, 231 F.3d at 927, n.4; *Miller v. United States*, 150 F. Supp. 2d 871, 880 (E.D.N.C. 2001)). "If counsel has not consulted with his client, the court must then ask whether the failure to consult itself constitutes deficient performance." *Witherspoon*, 231 F.3d at 926 (citing *Roe*, 528 U.S. at 478-79). "The Sixth Amendment requires counsel to consult with the defendant concerning whether to appeal when counsel has reason to believe 'either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that

---

[2] Cephus made this argument for the first time at the evidentiary hearing and has not requested leave to amend his § 2255 petition to include such argument; thus, it need not be considered. *See Albarran-Torres v. United States*, No. 7:10-CR-153-D, 2013 WL 2456554, at *3 (E.D.N.C. June 6, 2013) (citations omitted) (concluding that a § 2255 petition cannot be amended via a response brief). However, to the extent Cephus's ineffective assistance claim based on the alleged failure to file an appeal could arguably be read broadly enough to encompass a claim based on a failure to consult, it will be addressed.

12

this particular defendant reasonably demonstrated to counsel that he was interested in appealing.'"
*Id.* (citing *Roe*, 528 U.S. at 480). In determining whether counsel has a constitutional duty to consult, the Supreme Court provided the follow guidance:

> Although not determinative, a highly relevant factor in this inquiry will be whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings. Even in cases when the defendant pleads guilty, the court must consider such factors as whether the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights. Only by considering all relevant factors in a given case can a court properly determine whether a rational defendant would have desired an appeal or that the particular defendant sufficiently demonstrated to counsel an interest in an appeal.

*Roe*, 528 U.S. at 480. Finally, the defendant must show prejudice, i.e., "a defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Id.* at 484.

Perry acknowledged that he did not have an in-depth discussion during the post-sentencing meeting with Cephus regarding the advantages and disadvantages of filing an appeal. *See* Hr'g Tr. 30:11-32:3. However, Perry explained that, pursuant to his standard practice, during "conversations shortly after the sentence and certainly before the sentence[,] [Perry and Cephus] would have talked about not only a 5K, not only right to appeal, but we would have also talked about a Rule 35 and we would have talked about how . . . if an appeal is filed that might impact the ability to be able to get a Rule 35." *Id.* 27:14-19. Perry testified that the strategy from the outset in Cephus's case was to pursue sentence reductions through cooperation with the government, *id.* 19:25-20:8, and pursuant to Perry's standard practice he discussed this approach, as well as various appeal scenarios, thoroughly with Cephus in approximately twelve meetings, lasting an hour or more, prior to

13

sentencing, *id.* 26:4-11, 27:13-20.

Based on the extensive pre-sentencing discussions regarding appeal strategy between Perry and Cephus, when viewed in light of the possibility that Cephus might still receive a Rule 35 motion and that Cephus had withdrawn his objections to the PSR at sentencing and executed an appeal waiver, Perry's limited post-sentencing discussion with Cephus regarding his appellate rights is arguably sufficient to satisfy the constitutional duty of consultation in the present case. *See Roe*, 528 U.S. at 477 ("[C]ourts must 'judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct,' and '[j]udicial scrutiny of counsel's performance must be highly deferential[.]'") (quoting *Strickland*, 466 U.S. at 689-90) (internal citations omitted). However, assuming without deciding that Perry failed in his constitutional duty to consult with Cephus by not having a more extensive discussion post-sentencing regarding Cephus's appellate rights, and further assuming that Perry had a constitutional duty to consult with Cephus based on Cephus receiving a sentence of 144 months' imprisonment, twice that recommended by the government, Cephus has failed to demonstrate the requisite prejudice as a result.

"[T]he question whether a given defendant has made the requisite showing [of prejudice] will turn on the facts of a particular case." *Roe*, 528 U.S. at 485 (citation omitted). "Nonetheless, evidence that there were nonfrivolous grounds for appeal or that the defendant in question promptly expressed a desire to appeal will often be highly relevant in making this determination." *Id.* Cephus argued at the evidentiary hearing that his appellate counsel's filing of a brief on the merits, as opposed to an *Anders* brief, indicates that Cephus had a meritorious basis for appeal. Hr'g Tr. 37:8-15. However, the fact that counsel did not file an *Anders* brief does not *per se* indicate that there was

14

a nonfrivolous basis for appeal where Cephus's appellate counsel acknowledged that "Cephus's plea agreement contains an appeal waiver provision," but declined to address it because the government had not yet moved to enforce the provision. Appellant's Br. at 3 *United States v. Cephus*, No. 12-4887 (4th Cir. Jan. 8, 2013). The government is not required to invoke an appeal waiver at the outset of the appeal. *See United States v. Weber*, 493 F. App'x 407, 409 n.2 (4th Cir. 2012) ("We recognize that our precedent and local rules allow the government to defer invoking an appeal waiver.") (citing *United States v. Poindexter*, 492 F.3d 263, 270 (4th Cir. 2007); 4th Cir. R. 27(f)). Cephus's appeal was ultimately dismissed as untimely without the government invoking the appeal waiver. *See* Order at 2 *Cephus*, No. 12-4887 (4th Cir. Mar. 5, 2013). The government did ask the district court to enforce the appeal waiver in this case, which the district court found appropriate with respect to Cephus's sentencing error claims–the claims Cephus presumably would have sought to raise on direct appeal. [DE-59] at 4-5. Furthermore, the fact that there may have been nonfrivolous grounds for an appeal, while probative, is not alone dispositive of the prejudice issue. *See Roe*, 528 U.S. at 486 ("[S]howing nonfrivolous grounds for appeal may give weight to the contention that the defendant would have appealed[.]").

Here, Cephus has failed to show that had he "received reasonable advice from counsel about the appeal, he would have instructed his counsel to file an appeal." *Id.* at 486. As discussed above, Cephus expressed no interest in appealing his sentence until he discovered the new information from Martinez months after his appeal time had run. Furthermore, the possibility that Cephus could have still received a reduction in his sentence pursuant to Rule 35 weighs heavily against a finding that he would have instructed Perry to file an appeal after further consultation, particularly where Cephus pleaded guilty, withdrew his objections to the PSR at sentencing, and executed an appeal waiver.

15

*See Kelly v. United States*, No. 5:09-CR-5-01-F, 2011 WL 1366387, at *4 (E.D.N.C. Apr. 11, 2011) (concluding defendant did not demonstrate *Strickland* prejudice and stating that "[h]ope of receiving a Rule 35(b) motion for a reduction in sentence is a well-accepted reason not to file a direct appeal; sometimes the hope is justified, as here, but sometimes it is not."). Accordingly, Cephus has failed to establish prejudice–a reasonable probability that had Perry engaged in further consultation post-sentencing regarding Cephus's appeal rights, Cephus would have timely appealed.

## V. CONCLUSION

For the reasons stated above, it is recommended that the Petitioner's 28 U.S.C. § 2255 claim for ineffective assistance of counsel based on counsel's failure to file an appeal, or alternatively a failure to consult, be dismissed.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have fourteen (14) days after receiving it to file written objections. Failure to file timely written objections bars or may bar an aggrieved party from receiving a *de novo* review by the District Court on an issue covered in the Report and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

SUBMITTED, this the 20th day of November 2013.

Robert B. Jones, Jr.
United States Magistrate Judge

16